**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION**

| | |
|---|---|
| NICHOLAS NORTHERN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | Case No. 1:24-CV-00074-SPM |
| ) | |
| FRANK BISIGNANO, ) | |
| Commissioner of Social Security,[1] ) | |
| ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of Defendant Frank Bisignano, Commissioner of Social Security (the "Commissioner") denying the application of Plaintiff Nicholas Northern ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq.*, and for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381, *et seq.* (the "Act"). The parties consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 636(c). ECF No. 6. Because I find the decision denying benefits was supported by substantial evidence, I will affirm the Commissioner's denial of Plaintiff's application.

---

[1] Frank Bisignano is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano is substituted as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.      FACTUAL AND PROCEDURAL BACKGROUND

In February of 2022, Plaintiff applied for DIB and SSI, alleging that he had been unable to work since February 9, 2022. (Tr. 223-38). He alleged disability based on problems with his back, neck, and ankles; diabetes, hypertension; neuropathy; sleep apnea; heart attack; degenerative disc disease; and anxiety. (Tr. 252). His applications were denied initially and on reconsideration, and he requested review by an administrative law judge ("ALJ"). (Tr. 114-52).

On May 31, 2023, Plaintiff testified at a hearing before the ALJ. (Tr. 40-57). Plaintiff testified that he stopped working in January or February of 2022 due to health issues. (Tr. 44). He believes he cannot work because of pain in his back, chest, and right arm; scoliosis in his back that causes him great discomfort in sitting and standing; walking "like [he's] a decrepit old man"; and debilitating pain if he uses his right arm too much or lifts too much weight. (Tr. 46). He has sporadic episodes where he faints; these happen from four times a week to once or twice a day. (Tr. 50-51). He lost his last job due to those episodes and his poor attendance. (Tr. 51). He has blacked out while standing. (Tr. 51). He sometimes gets chest pain and gets lightheaded. (Tr. 51-52). He has arthritis in his right knee, and it hurts if he walks too long. (Tr. 52). His feet also swell because of his diabetes and high blood pressure; together with his knee pain, this would keep him from being able to stand on his feet for six hours in an eight-hour day. (Tr. 52). He could not sit for six hours in an eight-hour day because of his lower back pain and because his head does not want to stay up straight. (Tr. 52). His left index finger, middle finger, and thumb sometimes want to lock up. (Tr. 53). He would have to call in sick about three to four times a month because when an episode comes on, he cannot drive. (Tr. 54). He spends his days looking after his four-year old, trying to the best of his ability to do household chores (such as dishes, mowing his small lawn, and taking out the trash), and playing video games. (Tr. 48-50).

On August 23, 2023, the ALJ entered an unfavorable decision. (Tr. 10-35). Plaintiff filed a Request for Review of Hearing Decision with the Social Security Administration's Appeals Council, and the Appeals Council denied the request for review on March 13, 2024. (Tr. 1-5). Plaintiff has exhausted all administrative remedies, and the decision of the ALJ stands as the final decision of the Commissioner of the Social Security Administration.

The Court accepts the facts as set forth in the parties' respective statements of fact and responses. The Court will cite to specific portions of the transcript as needed to address the parties' arguments.

## II.   STANDARD FOR DETERMINING DISABILITY UNDER THE ACT

To be eligible for benefits under the Act, a claimant must prove he or she is disabled. *Pearsall v. Massanari,* 274 F.3d 1211, 1217 (8th Cir. 2001); *Baker v. Sec'y of Health & Hum. Servs.*, 955 F.2d 552, 555 (8th Cir. 1992). Under the Act, a person is disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). *Accord Hurd v. Astrue*, 621 F.3d 734, 738 (8th Cir. 2010). The impairment must be "of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he [or she] lives, or whether a specific job vacancy exists for him [or her], or whether he [or she] would be hired if he [or she] applied for work." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

3

To determine whether a claimant is disabled, the Commissioner engages in a five-step evaluation process. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011) (discussing the five-step process). At Step One, the Commissioner determines whether the claimant is currently engaging in "substantial gainful activity"; if the claimant is, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i); *McCoy*, 648 F.3d at 611. At Step Two, the Commissioner determines whether the claimant has "a severe medically determinable physical or mental impairment that meets the [twelve-month duration requirement in § 404.1509 or § 416.909], or a combination of impairments that is severe and meets the duration requirement"; if the claimant does not have a severe impairment, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(ii); *McCoy*, 648 F.3d at 611. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). At Step Three, the Commissioner evaluates whether the claimant's impairment meets or equals one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "listings"). 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii); *McCoy*, 648 F.3d at 611. If the claimant has such an impairment, the Commissioner finds the claimant disabled; if not, the Commissioner proceeds with the rest of the five-step process. 20 C.F.R. §§ 404.1520(d), 416.920(d); *McCoy*, 648 F.3d at 611.

Prior to Step Four, the Commissioner assesses the claimant's residual functional capacity ("RFC"), 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), which is "the most [a claimant] can still do despite [his or her] limitations," 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). *See also Moore v. Astrue*, 572 F.3d 520, 523 (8th Cir. 2009). At Step Four, the Commissioner determines whether the claimant can return to his or her past relevant work by comparing the claimant's RFC with the physical and mental demands of the claimant's past relevant work. 20 C.F.R.

4

§§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. If the claimant can perform his or her past relevant work, the claimant is not disabled; if the claimant cannot, the analysis proceeds to the next step. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f); *McCoy*, 648 F.3d at 611. At Step Five, the Commissioner considers the claimant's RFC, age, education, and work experience to determine whether the claimant can make an adjustment to other work in the national economy; if the claimant cannot make an adjustment to other work, the claimant is found disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g), 404.1560(c)(2), 416.920(a)(4)(v), 416.920(g), 416.1560(c)(2); *McCoy*, 648 F.3d at 611.

Through Step Four, the burden remains with the claimant to prove that he or she is disabled. *Moore*, 572 F.3d at 523. At Step Five, the burden shifts to the Commissioner to establish that, given the claimant's RFC, age, education, and work experience, there are a significant number of other jobs in the national economy that the claimant can perform. *Id.*; *Brock v. Astrue*, 674 F.3d 1062, 1064 (8th Cir. 2012); 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2).

### III.   THE ALJ'S DECISION

Applying the foregoing five-step analysis, the ALJ here found that Plaintiff had not engaged in substantial gainful activity since February 9, 2022, the alleged onset date; that Plaintiff had the severe impairments of cervical spine degenerative disc disease with radiculopathy, lumbar spine degenerative disc disease, obstructive sleep apnea, type 2 diabetes mellitus with neuropathy, morbid obesity, and hypertension; and that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1 (Tr. 15-19). The ALJ found that Plaintiff had the following RFC:

5

> [Plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with the following limitations: frequently climb ramps and stairs; avoid climbing ladders, ropes, or scaffolds; frequently balance as defined in the Selected Characteristics of Occupations (SCO) of the Dictionary of Occupational Titles (DOT); occasionally stoop, kneel, crouch, and crawl; bilateral frequent overhead reaching; avoid hazards such as unprotected heights and dangerous machinery; avoid exposure to concentrated fumes, odors, gases, dusts, and poor ventilation.

(Tr. 20-21). At Step Four, relying on the testimony of a vocational expert ("VE"), the ALJ found that Plaintiff was capable of performing his past relevant work as a host as that work is actually and generally performed. (Tr. 27-28). The ALJ also made an alternative finding at Step Five that there were other jobs that existed in significant numbers in the national economy that Plaintiff could also perform, including representative occupations such as office helper, routing clerk, and price marker. (Tr. 28-29). Accordingly, the ALJ found that Plaintiff had not been under a disability, as defined in the Act, from February 9, 2022, through the date of the decision (August 23, 2023).

## IV.  STANDARD FOR JUDICIAL REVIEW

The decision of the Commissioner must be affirmed if it "complies with the relevant legal requirements and is supported by substantial evidence in the record as a whole." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (quoting *Ford v. Astrue*, 58 F.3d 979, 981 (8th Cir. 2008)); *see also* 42 U.S.C. §§ 405(g); 1383(c)(3). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion." *Pate-Fires*, 564 F.3d at 942 (quotation marks omitted). *See also Biestek*, 587 U.S. at 103 ("Substantial evidence . . . means—and means only—'such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion.'") (quoting *Consol. Edison*, 305 U.S. at 229).

In determining whether substantial evidence supports the Commissioner's decision, the court considers both evidence that supports that decision and evidence that detracts from that decision. *Renstrom v. Astrue*, 680 F.3d 1057, 1063 (8th Cir. 2012). However, the court "'do[es] not reweigh the evidence presented to the ALJ, and [it] defer[s] to the ALJ's determinations regarding the credibility of testimony, as long as those determinations are supported by good reasons and substantial evidence.'" *Id.* at 1064 (quoting *Gonzales v. Barnhart*, 465 F.3d 890, 894 (8th Cir. 2006)). "If, after reviewing the record, the court finds it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings, the court must affirm the ALJ's decision." *Partee v. Astrue*, 638 F.3d 860, 863 (8th Cir. 2011) (quoting *Goff v. Barnhart*, 421 F.3d 785, 789 (8th Cir. 2005)).

The Court reviews de novo whether the Commissioner's determination was based on legal error. *Dewey v. Astrue*, 509 F.3d 447, 449 (8th Cir. 2007) (citing *Miles v. Barnhart*, 374 F.3d 694, 698 (8th Cir. 2004)); *Keller v. Shalala,* 26 F.3d 856, 858 (8th Cir. 1994)). "Legal error may be an error of procedure, the use of erroneous legal standards, or an incorrect application of the law." *Collins v. Astrue,* 648 F.3d 869, 871 (8th Cir. 2011) (internal citations omitted).

## V. DISCUSSION

Plaintiff challenges the ALJ's decision on three grounds: (1) that the ALJ erred as a matter of law in finding Plaintiff's non-severe conditions were non-severe because they did not last for 12 months; (2) that the ALJ erred in finding that Plaintiff could perform his past relevant work as a host; and (3) that the ALJ erred in failing to find that Plaintiff's absenteeism would make him unemployable.

7

After careful review of the record, for the reasons stated below and in the Commissioner's brief, the Court finds that the ALJ's decision is free from legal error and that the record as a whole contains substantial evidence to support the ALJ's finding that Plaintiff was not disabled. The Court will briefly address Plaintiff's specific arguments.

First, the Court finds the ALJ did not err in finding at Step Two that Plaintiff's GERD, right elbow degenerative joint disease, right knee degenerative joint disease, anxiety, depression, and chest pain with syncopal-like episodes were not severe impairments. To be severe, an impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities," 20 C.F.R. §§ 404.1520(c), 416.920(c), and it "must have lasted or must be expected to last for a continuous period of at least 12 months," 20 C.F.R. §§ 404.1509, 416.909. The ALJ discussed in some detail the medical records related to these impairments. (Tr. 16-18). The ALJ's finding that these impairments were not severe is supported by substantial evidence, including evidence that Plaintiff's history of GERD was prior to the alleged onset date and was without any indication of related functional limitations (Tr. 370), evidence that Plaintiff's right elbow and knee pain improved with injections and physical therapy and that Plaintiff declined further treatment a few months after his alleged onset date (Tr. 1159, 1492-1508, 1658), cardiac and pulmonary testing and imaging showing normal or nearly normal results (Tr. 450, 453, 586, 588, 592, 1066, 1089, 1247, 1314), evidence that Plaintiff's anxiety was manageable (Tr. 919, 1005, 1029), and evidence that Plaintiff sometimes denied psychiatric symptoms (Tr. 678, 886, 1323, 1753, 2131).

Plaintiff argues that the ALJ erred as a matter of law in making these findings because her assessment was based on an incorrect statement regarding Step Two's 12-month duration requirement. Plaintiff points out that the ALJ stated, as to these impairments, "[T]here is no indication of related functional problems for a continuous 12-month period. Therefore, the

8

undersigned finds these conditions are non-severe." (Tr. 16). Plaintiff notes that the regulation's duration requirement may be satisfied if the impairment either "lasted" or "is expected to last" for a continuous period of at least 12 months. He argues that the ALJ considered only a continuous 12-month period in the past and "did not consider the very real probability that the conditions would extend into the future." ECF No. 10. The Court finds no error. First, it is not at all apparent from the cited ALJ statement that the ALJ was limiting her consideration to past 12-month periods. Second, even though this single statement did not fully quote the relevant regulation, the ALJ states elsewhere in the decision that disability is based on an impairment that "has lasted or can be expected to last for a continuous period of less than 12 months," indicating that the ALJ was aware of and applied the correct standard in evaluating the duration requirement. (Tr. 13).

Second, the Court finds that the ALJ did not err in finding Plaintiff could perform his past relevant work as a host. The ALJ's conclusion that Plaintiff had the RFC to perform light work, with some additional limitations, is supported by substantial evidence, [2] including the opinions of the state agency medical consultants that Plaintiff could perform light work with limitations similar to those in the RFC (Tr. 26-27, 69-71, 80-82, 89-91, 99-101), the opinion of Dr. William Nienaber that Plaintiff did not qualify for disability from a cardiac standpoint (Tr. 27, 1059), evidence that Plaintiff's conditions improved with treatment (Tr. 16, 23-24, (Tr. 1159, 1492-1508, 1658, 1755), numerous mild or normal objective findings (Tr. 25, 496, 678, 961, 1066, 1247, 1323, 1414, 1584, 2132), and evidence of daily activities that were at least to some extent inconsistent with Plaintiff's allegations (Tr. 26, 49-50, 294-300). The ALJ's conclusion that Plaintiff was capable of performing his past relevant work as a host is supported by the vocational expert's testimony that a hypothetical person with Plaintiff's RFC could perform Plaintiff's past relevant work as a host.

---

[2] It is not entirely clear whether, and on what basis, Plaintiff is challenging the RFC finding.

9

(Tr. 27-29, 57-60). Plaintiff's argument that the past host job "was probably at the medium level because he was required to collect shopping carts" and "[c]ommon knowledge and sense tells that collecting shopping carts is strenuous and exceeds the lifting requirements of light duty work," ECF No. 10, at 5, is without merit. Plaintiff testified at the hearing that his job involved pulling shopping carts off the lot, and the vocational expert still classified this work as light work and testified that a hypothetical person with Plaintiff's RFC could perform the host job. (Tr. 57-58, 60). The vocational expert's testimony constituted substantial evidence in support of the ALJ's Step Four finding. *See Galloway v. Kijakazi*, 46 F.4th 686, 689 (8th Cir. 2022) ("A vocational expert's testimony based on a properly phrased hypothetical question constitutes substantial evidence.") (quotation marks omitted). Plaintiff's speculation that common sense should have dictated a different outcome does not dictate a different outcome.

Finally, the Court finds that the ALJ did not err by failing to find that Plaintiff's absenteeism would make him unemployable. The Court first notes that Plaintiff's argument regarding his absenteeism is based solely on Plaintiff's testimony; he does not direct the Court to any medical opinions or other medical evidence supporting this testimony. Thus, the cases Plaintiff cites in which courts remanded for more specific discussion of absenteeism are distinguishable. *See Schnegelberger v. Kijakazi*, No. 4:22-CV-781-RHH, 2023 WL 8599486, at *6-*10 (E.D. Mo. Dec. 12, 2023) (remanding where two treating psychologists, treating social worker, and treating psychiatrist all opined that the plaintiff would miss work several days a month and the consultative examiner opined that his symptoms would cause avoidance of work); *Filmore v. Saul*, No. 4:18-CV-1609-ACL, 2019 WL 4576300, at *6-*8 (E.D. Mo. Sept. 20, 2019) (remanding where treating physician opined that it would be difficult for the plaintiff to maintain employment due to her frequent absences for treatment, including twice-monthly infusions and physical therapy). Here,

10

the Court finds that the ALJ properly discussed Plaintiff's testimony regarding how often he thought he would miss work (Tr. 21) and properly discounted it for several reasons, including Plaintiff's daily activities, relevant objective evidence, and Plaintiff's response to treatment. (Tr. 21-27). The Court finds these reasons were based on substantial evidence and were in accordance with the requirements set forth in the applicable regulations and case law. *See* 20 C.F.R. §§ 404.1529(a),(c), 416.929(a),(c); *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009). The Court will defer to the ALJ's assessment of Plaintiff's subjective complaints. *See Swink v. Saul*, 931 F.3d 765, 771 (8th Cir. 2019) (noting that the court will defer to assessments of subjective complaints that are "supported by good reasons and substantial evidence") (quoting *Schwandt v. Berryhill*, 926 F.3d 1004, 1012 (8th Cir. 2019)).

The Court acknowledges that the record contains conflicting evidence and that the ALJ could have reached a different conclusion on the issues raised. However, this Court's task is not to reweigh the evidence presented to the ALJ. The ALJ's weighing of the evidence here fell within the available "zone of choice," and the Court cannot disturb that decision even if it might have reached a different conclusion. *See Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

### VI.    CONCLUSION

For all of the foregoing reasons, the Court finds the ALJ's decision is supported by substantial evidence. Accordingly,

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

SHIRLEY PADMORE MENSAH
UNITED STATES MAGISTRATE JUDGE

Dated this 16th day of September, 2025.